# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| NORTHSTAR ENERGY LLC,<br>A Delaware limited liability company, | Case No. 1:13-cv-00200-PLM |
| | Hon. Paul L. Maloney |
| Plaintiff, | |
| v. | Mag. Judge Joseph G. Scoville |
| ENCANA CORPORATION,<br>a Canadian corporation, and | **BRIEF IN SUPPORT OF**<br>**O.I.L. NIAGARAN, L.L.C.'S MOTION**<br>**TO DISMISS THE COMPLAINT** |
| ENCANA OIL & GAS USA INC.,<br>a Delaware corporation, and | **PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| | **ORAL ARGUMENT REQUESTED** |
| CHESAPEAKE ENERGY CORPORATION,<br>an Oklahoma corporation, and | |
| O.I.L. NIAGARAN, LLC,<br>a Michigan limited liability company, | |
| Defendants. | |

_____/

Brian J. Masternak (P57372)
Charles N. Ash, Jr. (P55941)
Lance R. Zoerhof (P63980)
David R. Whitfield (P73352)
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
bmasternak@wnj.com
cash@wnj.com
lzoerhof@wnj.com
dwhitfield@wnj.com
616.752.2000
*Attorneys for Plaintiff NorthStar Energy LLC*

Molly S. Boast
Sanket J. Bulsara
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
molly.boast@wilmerhale.com
212.230.8800

Anthony J. Rusciano (P29834)
Dennis G. Cowan (P36184)
Michael J. Barton (P34509)
PLUNKETT COONEY, P.C.
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
arusciano@plunkettcooney.com
248.901.4000
*Attorneys for Defendants Chesapeake*
*Energy Corporation and O.I.L. Niagaran,*
*L.L.C.*

_____/

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION .........................................................................................................................1

SUMMARY OF THE COMPLAINT............................................................................................2

LEGAL STANDARD....................................................................................................................3

ARGUMENT.................................................................................................................................4

    All Claims Against OILN Should Be Dismissed Because OILN Is Not Alleged To
    Have Consciously Committed To Any Alleged Conspiracy ...............................................4

CONCLUSION..............................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 3, 4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 4, 7

*Brown v. Donco Enterprises, Inc.*,
    783 F.2d 644 (6th Cir. 1986) .................................................................................................. 4, 6

*Courie v. Alcoa Wheel & Forged Products*,
    577 F.3d 625 (6th Cir. 2009) ..................................................................................................... 3

*El Camino Resources, Ltd. v. Huntington National Bank*,
    722 F. Supp. 2d 875 (W.D. Mich. 2010),
    *aff'd*, No. 12-1254, 2013 WL 1397200 (6th Cir. Apr. 9, 2013) ............................................. 4, 6

*In re Southeastern Milk Antitrust Litigation*,
    801 F. Supp. 2d 705 (E.D. Tenn. 2011) .................................................................................. 6, 7

*In re Travel Agent Commission Antitrust Litigation*,
    583 F.3d 896 (6th Cir. 2009) ..................................................................................................... 7

*Jung v. Association of American Medical Colleges*,
    300 F. Supp. 2d 119 (D.D.C. 2004) ....................................................................................... 7, 8

*Krieger v. Gast*,
    No. 4:99-CV-86, 2000 WL 288442 (W.D. Mich. Jan. 21, 2000) ........................................... 4, 6

*Midwest Auto Auction, Inc. v. McNeal*,
    No. 11-14562, 2012 WL 3478647 (E.D. Mich. Aug. 14, 2012) ............................................... 4

*Monsanto Co. v. Spray-Rite Service Corp.*,
    465 U.S. 752 (1984) ....................................................................................................... 4, 5, 6, 7

*Perceptron, Inc. v. Sensor Adaptive Machines Inc.*,
    221 F.3d 913 (6th Cir. 2000) ..................................................................................................... 4

*S.O.G.-San Ore-Gardner v. Missouri Pacific Railroad Co.*,
    658 F.2d 562 (8th Cir. 1981) ..................................................................................................... 6

*Schmitt v. FMA Alliance*,
    398 F.3d 995 (8th Cir. 2005) .................................................................................................. 5, 6

*Siharath v. Citifinancial Services (In re: Siharath)*,
    285 B.R. 299 (Bankr. D. Minn. 2002) ..................................................................................6

*Williams v. Duke Energy International, Inc.*,
    681 F.3d 788 (6th Cir. 2012) ...............................................................................................4

**STATE CASES**

*Blair v. Checker Cab Co.*,
    219 Mich. App. 667, 558 N.W.2d 439 (1996) .....................................................................4

**FEDERAL STATUTES**

Sherman Act, 15 U.S.C. § 1 ............................................................................................................4

**STATE STATUTES**

Michigan Antitrust Reform Act, MCL 445.772 .............................................................................4

## **INTRODUCTION**

In the summer of 2010, O.I.L. Niagaran, L.L.C. ("OILN") acted as an agent for Chesapeake Energy Corporation ("Chesapeake") as Chesapeake considered acquiring oil and gas leases in northern Michigan. On June 25, 2010, OILN, on Chesapeake's behalf, placed a bid for certain leases owned by NorthStar Energy LLC ("NorthStar"). The Complaint purports to allege an anticompetitive agreement between Chesapeake and one of its competitors, Encana Corporation ("Encana"), acting through its subsidiary Encana Oil & Gas USA Inc. ("Encana USA"), that somehow led NorthStar to receive less value for its leases than it desired. NorthStar names OILN as a defendant in these claims. Whatever the merits of NorthStar's claims against Chesapeake and Encana may be—which are none, as Chesapeake demonstrates in a parallel submission—the Complaint provides no basis for liability against OILN.

The Complaint does not allege that OILN had any knowledge of an agreement between Chesapeake and Encana. OILN neither participated in nor was aware of the communications between Chesapeake and Encana on which NorthStar bases its claims. And OILN's role as Chesapeake's agent, without more, is insufficient to include OILN as a defendant. Without facts supporting OILN's knowing participation in any alleged anticompetitive agreement—a necessary element of all conspiracy claims—NorthStar falls far short of stating a viable claim against OILN. The Complaint against OILN should be dismissed.

## SUMMARY OF THE COMPLAINT

In early 2010, preliminary geological field reports emerged that the Utica and Collingwood shales[1] in northern Michigan could be commercially productive formations for oil, natural gas, and natural gas liquids. Compl. ¶¶ 24, 26. At this time, "several buyers interested in acquiring . . . Utica/Collingwood leaseholds in northern Michigan," including defendants Chesapeake and Encana, contacted NorthStar about purchasing certain formational oil and gas leasehold rights. *Id.* ¶¶ 2, 28. Through its agent OILN, a local Michigan company, Chesapeake contacted NorthStar on April 28, 2010. *Id.* ¶¶ 6, 28.[2]

In early June 2010, Chesapeake and Encana officials "started discussions" about jointly acquiring oil and gas leases on acreage in northern Michigan, to be shared 50/50, and later jointly operating in those areas. *Id.* ¶¶ 35, 37, Ex. G (June 6-25, 2010 emails between Chesapeake and Encana). Through emails, the two parties exchanged drafts of a non-binding letter of intent (LOI) for a proposed joint venture agreement. The draft LOI contemplated that Encana, not Chesapeake, would bid for NorthStar's properties and assigned Encana exclusive responsibility for "negotiat[ing] with . . . NorthStar . . . in an attempt to acquire leashold and/or other oil and gas interests." *Id.*, Ex. G (Draft – Version #2, ¶ 4). An LOI was "never signed." *Id.* ¶ 39. The Complaint does not allege that OILN was ever informed about any such proposal, and OILN was not included on the emails between Chesapeake and Encana. *See id.* ¶¶ 36-39, Ex. F (June 6-16, 2010 emails between Chesapeake and Encana); Ex. G (June 6-25, 2010 emails between Chesapeake and Encana).

---

[1] "Shale" is an underground rock formation that can contain oil, natural gas, liquid hydrocarbons, or other minerals.
[2] Large companies such as Chesapeake often hire local companies as their agents to perform the on-the-ground lease acquisitions.

2

NorthStar established a June 25 deadline for bidding on its leasehold package. *Id.* ¶ 33. On June 23, Encana informed NorthStar "that it was no longer interested in acquiring NorthStar's leases." *Id.* ¶ 40. On the June 25 bidding deadline, only OILN, on behalf of Chesapeake, made an offer to acquire NorthStar's leases. *Id.* ¶ 41. NorthStar counter-offered with a different outline of terms, "[s]ubject to a mutually acceptable form of PSA." *Id.*, Ex. K (June 28, 2010 counter-proposal letter from NorthStar to OILN). On July 8, OILN, on behalf of Chesapeake, accepted NorthStar's outline of terms. *Id.* ¶ 45, Ex. K (July 8, 2010 letter from OILN to NorthStar).

On the basis of these allegations, the Complaint alleges five counts against OILN. Counts I and III allege that OILN, with Chesapeake and Encana, entered an "unlawful contract, combination, or conspiracy" "to avoid bidding against one another on NorthStar's oil and gas deep rights leaseholds" in violation of Section 1 of the Sherman Act and Section 2 of the Michigan Antitrust Reform Act (MARA). *Id.* ¶¶ 65-66, 81. Counts II and IV allege that OILN, with Chesapeake and Encana, had an illegal "agreement to exchange competitive information" in violation of the Sherman Act and the MARA. *Id.* ¶¶ 73, 83. Finally, NorthStar alleges in Count VI secondary liability claims for civil conspiracy and concert of action against OILN, based on the agreements alleged in Counts I through IV.[3] *Id.* ¶¶ 93-94.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is well-settled that conclusory allegations, without supporting factual allegations, are insufficient to allow a complaint to proceed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

---

[3] Count V for tortious interference is not alleged against OILN.

3

("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 799 (6th Cir. 2012) ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).  *See also* Chesapeake's Brief in Support of Its Motion to Dismiss at 7-8.  Where "the plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### All Claims Against OILN Should Be Dismissed Because OILN Is Not Alleged To Have Consciously Committed To Any Alleged Conspiracy

The Complaint fails because it does not allege any facts demonstrating, or even permitting a court to infer, that OILN knowingly participated in an anticompetitive agreement. To assert any of the claims against OILN—the federal and state[4] antitrust claims (Counts I through IV), as well as the civil conspiracy and concert of action claims (Count VI)—the Complaint must allege that OILN consciously committed to and knowingly and intentionally engaged in an alleged conspiracy. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *Brown v. Donco Enters., Inc.*, 783 F.2d 644, 646 (6th Cir. 1986); *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 900 (W.D. Mich. 2010), *aff'd*, No. 12-1254, 2013 WL 1397200 (6th Cir. Apr. 9, 2013); *Krieger v. Gast*, No. 4:99-CV-86, 2000 WL 288442,

---

[4] The federal antitrust counts (Counts I and II) and the Michigan state antitrust counts (Counts III and IV)  rely on the same facts and assert the same legal theories under two laws: the Sherman Act, 15 U.S.C. § 1, and the Michigan Antitrust Reform Act (MARA), MCL 445.772. *See* Compl. ¶¶ 81, 83.  The MARA "is interpreted consistent with the Sherman Act." *Perceptron, Inc. v. Sensor Adaptive Machs. Inc.*, 221 F.3d 913, 919 n.6 (6th Cir. 2000).  Courts therefore have "applied the same analysis to claims under the Sherman Act and MARA." *Midwest Auto Auction, Inc. v. McNeal*, No. 11-14562, 2012 WL 3478647, at *5 n.5 (E.D. Mich. Aug. 14, 2012); *see also Blair v. Checker Cab Co.*, 219 Mich. App. 667, 675, 558 N.W.2d 439, 442 (1996) ("[T]he MARA and the Sherman Act require similar evidence of concerted action or combination.").  The same analysis therefore directs dismissal of both sets of claims.

at *12 (W.D. Mich. Jan. 21, 2000). Because the Complaint lacks specific, non-conclusory allegations of OILN's knowing involvement in an alleged conspiracy, the claims against OILN should be dismissed. Separately, the claims should be dismissed because, as shown in Chesapeake's Brief in Support of Its Motion to Dismiss ("Chesapeake's Brief"), the Complaint fails to state a claim for antitrust conspiracy in Counts I through IV or civil conspiracy and concert of action in Count VI. OILN hereby incorporates all of Chesapeake's Brief by reference, which provides additional, independent bases for dismissing the claims against OILN.

The Complaint against OILN fails to allege facts that show, or provide a basis to infer, that OILN "had a conscious commitment to" any alleged conspiracy. *See Monsanto*, 465 U.S. at 764. The specific paragraphs in the Complaint touching on OILN's conduct allege one thing only: that OILN acted as Chesapeake's agent during the NorthStar bidding process and subsequent contract negotiations. *See*, *e.g.*, Compl. ¶ 28 ("NorthStar was contacted by . . . Michael Coy of OILN, on Chesapeake's behalf"); *id.* ¶ 31 ("Only three interested buyers, Encana, Chesapeake (through OILN), and Atlas Gas & Oil Company, LLC . . . signed the Confidentiality Agreement to see the specifics on NorthStar's leaseholds."); *id.* ¶ 32 ("Chesapeake, by and through Michael Coy of OILN, signed the Confidentiality Agreement with NorthStar on June 10, 2010."); *id.* ¶ 45 ("OILN's Michael Coy sent NorthStar a letter officially accepting NorthStar's counter-offer.").

OILN's service as an agent of an alleged conspirator is insufficient to establish that it acted with the knowledge necessary to impose antitrust liability. The law does not impute a principal's alleged knowledge to the agent based simply on its agency status. An inference that OILN, as Chesapeake's agent, had knowledge of Chesapeake's alleged actions and agreements would "contradict[] established agency law, which dictates that while the knowledge of the agent

5

is imputed to the principal, the converse is not true." *Schmitt v. FMA Alliance*, 398 F.3d 995, 997 (8th Cir. 2005); *see also S.O.G.-San Ore-Gardner v. Mo. Pac. R.R. Co.*, 658 F.2d 562, 567 (8th Cir. 1981) (an agent cannot be imputed with information the principal failed to disclose); *Siharath v. Citifinancial Servs. (In re: Siharath)*, 285 B.R. 299, 304 (Bankr. D. Minn. 2002) (although an agent's knowledge is imputed to the principal when an agent acts within the scope of an agency relationship, this rule "does not operate in the converse, and the agent cannot be imputed with the information which its principal has failed to give it").

Because it cannot rely on OILN's role as Chesapeake's agent to support its claims, NorthStar must allege specific facts demonstrating that OILN consciously committed to, and actively and knowingly engaged in, any alleged anticompetitive agreement. The legal standard for all the claims against OILN—whether framed as antitrust conspiracy, civil conspiracy, or concert of action—is the same in this regard: It requires NorthStar to plead active and knowing participation by OILN. *See Monsanto*, 465 U.S. at 764 (antitrust plaintiff must show that defendants "had a conscious commitment to a common scheme") (citation omitted); *Brown*, 783 F.2d at 646 ("Individual liability under the antitrust laws can be imposed only where corporate agents are actively and knowingly engaged in a scheme designed to achieve anticompetitive ends."); *El Camino Res., Ltd.*, 722 F. Supp. 2d at 900 (concert of action requires that defendants "knowingly acted to further a common purpose") (citation omitted); *Krieger*, 2000 WL 288442, at *12 (civil conspiracy requires "some degree of knowing participation") (citation omitted); *see also In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705, 737 (E.D. Tenn. 2011) ("[I]n the Sixth Circuit, to meet the standard for individual liability [of an agent], *i.e.*, active and knowing participation, the evidence must show that the defendant exerted influence over corporate decisions to the point that his influence shaped corporate intentions.") (citing *Brown*, 783 F.2d at

6

646). Mere participation in "various dealings and agreements" alleged to be "part of the anticompetitive scheme" does not establish active and knowing participation. *In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d at 739.

There is no allegation—not even a conclusory one—that OILN individually "actively and knowingly joined or agreed to participate in" any alleged conspiracy that could form a basis for holding OILN liable for an antitrust or common law conspiracy claim. The Complaint's conclusory description of the conduct of all "Defendants," *see*, *e.g.*, Compl. ¶¶ 11, 65-66; *see also*, *e.g.*, *id.* ¶¶ 41-42 (referring collectively to "Chesapeake/OILN"), "represent precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009); *see also Monsanto Co.*, 465 U.S. at 764 (antitrust plaintiff must present "evidence that reasonably tends to prove that [each defendant] had a conscious commitment to a common scheme designed to achieve an unlawful objective" (internal quotation marks and citations omitted)); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 161 (D.D.C. 2004) (antitrust plaintiff has "burden of adequately alleging that a conspiracy to restrain trade existed in the first instance and that each defendant knowingly joined or agreed to participate in the conspiracy"). Indeed, elsewhere the Complaint itself appears to concede that OILN is not even alleged to have been part of the agreement. *See* Compl. ¶ 8 (asserting conclusory allegations about "Encana and Chesapeake's agreement"); *see also id.* ¶¶ 7, 9 (similar).

There likewise is no basis to infer that OILN knowingly participated in the alleged conspiracy between Chesapeake and Encana. NorthStar's Complaint relies on a series of emails between Chesapeake and Encana, Compl. ¶¶ 36-37; exchanges of a draft proposed non-binding LOI between Chesapeake and Encana that was "never signed," *id.* ¶ 39; and three Reuters news

7

articles, *id*. ¶¶ 36-38, 46, 49, 58, 61.  OILN is absent from the alleged communications and draft LOI exchanges between Chesapeake and Encana on which the Complaint relies.  *See id.* ¶¶ 36-39, Ex. F (June 6-16, 2010 emails between Chesapeake and Encana); Ex. G (June 6-25, 2010 emails between Chesapeake and Encana).  Indeed, with one exception, OILN is absent from all the emails attached to the Complaint that mention Encana.  That exception involves a June 16-17 conversation between OILN's David McGuire and several Chesapeake officials.  Compl. ¶ 37, Ex. H (June 16-17, 2010 emails between Chesapeake and OILN).  In one email, OILN's David McGuire reported to Chesapeake about his negotiations with Walter Zaremba, a different and separate leasehold owner in Michigan.  Compl. ¶ 37, Ex. H (June 16, 2010 14:54 email from OILN's McGuire to Chesapeake's Gary Dunlap, *et al.*).  In response, Chesapeake's Aubrey McClendon questioned Mr. McGuire about Zaremba and remarked to another Chesapeake official that it is "ti[m]e to smoke a peace pipe with [Encana] on this one [*i.e.*, Zaremba] if we are bidding each other up."  Compl. ¶ 37, Ex. H (June 16, 2010 4:04 pm email from Chesapeake's McClendon).

This email chain dealt with Chesapeake's negotiations with Zaremba, not NorthStar, and the suggestion that it might be "ti[m]e" to broach a conversation with Encana makes clear that Chesapeake had no existing understanding with Encana about Zaremba.  This email chain cannot single-handedly support the inference that OILN had "consciously committed to" or was "actively and knowingly engaged in" an alleged conspiracy targeting *NorthStar's* leaseholds.  Even if seeing such a comment from Mr. McClendon made Mr. McGuire aware of possible communication between Chesapeake and Encana, such awareness would be insufficient to suggest that OILN knowingly joined or participated in any alleged conspiracy.  *See Jung*, 300 F.

8

Supp. 2d at 161 (plaintiff must show "that each defendant knowingly joined or agreed to participate in the conspiracy").

In sum, to assert a conspiracy claim against OILN—whether it is couched as an antitrust conspiracy, civil conspiracy, or concert of action claim—the Complaint must demonstrate OILN's knowing participation in the alleged conduct.  Here, the Complaint contains no specific allegation or basis for inferring that OILN consciously committed to or knowingly participated in any alleged conspiracy, and the law will not impute Chesapeake's alleged knowledge to its agent, OILN.  Accordingly, Counts I, II, III, IV, and VI against OILN should be dismissed.

## CONCLUSION

For the reasons set forth herein and in Chesapeake's Brief, the Court should dismiss the Complaint against OILN with prejudice.

        Respectfully submitted,

        WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for Defendants Chesapeake Energy Corporation and O.I.L. Niagaran, L.L.C.*

Dated: April 30, 2013        By: /s/ Molly S. Boast
        Molly S. Boast
        Sanket J. Bulsara
        7 World Trade Center
        250 Greenwich Street
        New York, NY 10007
        212.230.8800
        molly.boast@wilmerhale.com