# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| NORTHSTAR ENERGY LLC,<br>A Delaware limited liability company,<br><br>   Plaintiff,<br><br>v.<br><br>ENCANA CORPORATION,<br>a Canadian corporation, and<br><br>ENCANA OIL & GAS USA INC.,<br>a Delaware corporation, and<br><br>CHESAPEAKE ENERGY CORPORATION,<br>an Oklahoma corporation, and<br><br>O.I.L. NIAGARAN, LLC,<br>a Michigan limited liability company,<br><br>   Defendants. | Case No. 1:13-cv-00200-PLM<br><br>Hon. Paul L. Maloney<br><br>Mag. Judge Joseph G. Scoville<br><br>**REPLY BRIEF IN SUPPORT OF O.I.L. NIAGARAN, L.L.C.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**ORAL ARGUMENT REQUESTED** |

Brian J. Masternak (P57372)
Charles N. Ash, Jr. (P55941)
Lance R. Zoerhof (P63980)
David R. Whitfield (P73352)
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
bmasternak@wnj.com
cash@wnj.com
lzoerhof@wnj.com
dwhitfield@wnj.com
616.752.2000
*Attorneys for Plaintiff NorthStar Energy LLC*

Molly S. Boast
Sanket J. Bulsara
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
molly.boast@wilmerhale.com
212.230.8800

Anthony J. Rusciano (P29834)
Dennis G. Cowan (P36184)
Michael J. Barton (P34509)
PLUNKETT COONEY, P.C.
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
arusciano@plunkettcooney.com
248.901.4000
*Attorneys for Defendants Chesapeake Energy Corporation and O.I.L. Niagaran, L.L.C.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... i

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD..............................................................................................................1

ARGUMENT ...........................................................................................................................2

    I.    NorthStar Cannot Rely On The "Acquiescence Doctrine"; It Must Allege Facts Demonstrating OILN's Active And Knowing Involvement In The Alleged Antitrust Conspiracy ..............................................................................................2

    II.    NorthStar's Allegations Do Not Plausibly Suggest OILN's Active And Knowing Participation ..................................................................................................4

CONCLUSION........................................................................................................................9

# TABLE OF AUTHORITIES

## CASES

                                                     **Page(s)**

*Avgerinos v. Palmyra-Macedon Central School District,*
    690 F. Supp. 2d 115 (W.D.N.Y. 2010) ......................................................................................9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................................1

*Blay v. Zipcar, Inc.,*
    716 F. Supp. 2d 115 (D. Mass. 2010) ...................................................................................8, 9

*Brown v. Donco Enterprises, Inc.,*
    783 F.2d 644 (6th Cir. 1986). ...................................................................................................2

*Center for Bio-Ethical Reform, Inc. v. Napolitano,*
    648 F.3d 365 (6th Cir. 2011) ....................................................................................................2

*Estate of Barney v. PNC Bank, National Association,*
    714 F.3d 920 (6th Cir. 2013) ....................................................................................................1

*Flintkote Co. v. Lysfjord,*
    246 F.2d 368 (9th Cir. 1957) ....................................................................................................3

*In re Southeastern Milk Antitrust Litigation,*
    555 F. Supp. 2d 934 (E.D. Tenn. 2008) ....................................................................................2

*In re Southeastern Milk Antitrust Litigation,*
    801 F. Supp. 2d 705 (E.D. Tenn. 2011) ....................................................................................2

*Iqbal v. Ashcroft,*
    556 U.S. 662 (2009) ..............................................................................................................1, 2

*MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.,*
    62 F.3d 967 (7th Cir. 1995) ......................................................................................................3

*Rondigo, L.L.C. v. Township of Richmond,*
    641 F.3d 673 (6th Cir. 2011) ....................................................................................................2

*Schmitt v. FMA Alliance,*
    398 F.3d 995 (8th Cir. 2005) ....................................................................................................5

*S.O.G.-San Ore-Gardner v. Missouri Pacific R.R. Co.,*
    658 F.2d 562 (8th Cir. 1981) ....................................................................................................5

*United States v. Paramount Pictures, Inc.,*
    334 U.S. 131 (1948) ..................................................................................................................3

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.,*
    156 F.3d 535 (4th Cir. 1998) ....................................................................................................3

*Weiner v. Klais & Co.,*
    108 F.3d 86 (6th Cir. 1997) ......................................................................................................8

## INTRODUCTION

For each of its claims against O.I.L. Niagaran, L.L.C. ("OILN"), NorthStar Energy LLC ("NorthStar") must allege specific facts providing a plausible basis to infer that OILN actively and knowingly participated in an alleged conspiracy between Chesapeake Energy Corporation ("Chesapeake") and Encana Corporation ("Encana"). *See* Br. In Support Of OILN's Mot. To Dismiss, Dkt. 21("OILN Br.") at 4-5. NorthStar concedes the relevant legal standards: that it must allege OILN's active and knowing participation in an illegal conspiracy, and that OILN's status as an agent for Chesapeake is insufficient to do so. NorthStar's Resp. To OILN Br., Dkt. 28 ("NorthStar Resp.") at 8, 9. Instead, NorthStar insists that the Complaint is sufficient by inventing facts that are found nowhere in (or are even contradicted by) the document. This strategy of mischaracterization and obfuscation does not cure the deficits of its Complaint, which mentions OILN only a handful of times, usually in conclusory allegations. Under *Twombly*, these allegations are insufficient to survive OILN's motion, and the claims against OILN should be dismissed.[1]

## LEGAL STANDARD

The parties agree that to survive a motion to dismiss, NorthStar's Complaint must "'state a claim to relief that is plausible on its face.'" NorthStar's Resp. To Br. In Support Of Chesapeake's Mot. To Dismiss, Dkt. 27, at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only if the "'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 924 (6th Cir. 2013) (quoting *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009)). *Iqbal v. Ashcroft*—which NorthStar

---

[1] OILN hereby incorporates by reference all of the Reply Brief In Support Of Chesapeake's Motion To Dismiss, which provides additional, independent bases for dismissing the claims against OILN.

neglects to cite—makes clear that plausibility "'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Indeed, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Rondigo, L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 680 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted)).[2]

## ARGUMENT

I.  **NorthStar Cannot Rely On The "Acquiescence Doctrine"; It Must Allege Facts Demonstrating OILN's Active And Knowing Involvement In The Alleged Antitrust Conspiracy**

NorthStar recognizes it must plead that OILN "'participated in, authorized, directed, and/or knowingly approved or ratified'" the alleged conspiracy between Chesapeake and Encana. NorthStar Resp. at 8 (quoting *In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 949 (E.D. Tenn. 2008)); *see also* OILN Br. at 4. Mere conclusory allegations are insufficient; NorthStar must provide specific factual allegations that OILN actively and knowingly participated in the alleged anticompetitive agreement on which it bases its claims. "[I]n the Sixth Circuit, to meet the standard for individual liability [of an agent], *i.e.*, active and knowing participation, the evidence must show that the defendant exerted influence over corporate decisions to the point that his influence shaped corporate intentions." *See In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705, 737 (E.D. Tenn. 2011) (quoting *Brown v. Donco Enters., Inc* , 783 F.2d 644, 646 (6th Cir. 1986)).

---

[2] NorthStar does not cite any passage of OILN's Motion to Dismiss to support its accusations that OILN has misstated the pleading standard. *See* NorthStar Resp. at 8 (accusing OILN based on "Dkt. 23, p. 6," an apparent reference to the three-page Declaration of Molly S. Boast); *id.* at 9 (accusing OILN without citing its brief).

NorthStar is incorrect that pleading OILN's "acquiescence" provides a sufficient, alternative route to alleging OILN's liability. NorthStar Resp. at 11-12. NorthStar simply misunderstands the acquiescence doctrine: it is a defense, not a means to demonstrate liability. A defendant asserting acquiescence contends it should not be held liable for its *knowing* participation in an anticompetitive conspiracy because it was forced to participate. *See United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 161 (1948) (rejecting defendants' argument that they were not liable because co-conspirators "with whom defendants dealt fathered the illegal practices and forced them onto the defendants"). The acquiescence defense has nothing to do with the requirement that a plaintiff must allege facts sufficient to allow a plausible inference of active and knowing participation. Indeed, to assert the defense of acquiescence, a defendant effectively concedes that it knew about the illegal conspiracy in which it acquiesced. *See id.* (cited by NorthStar Resp. at 11-12) (accepting district court's finding that defendants first knew of the alleged scheme and then acquiesced); *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541 (4th Cir. 1998) (cited by NorthStar Resp. at 11-12) (defendant knew of alleged conspiracy because it was a party to the anticompetitive transaction); *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 374 (9th Cir. 1957) (cited by NorthStar Resp. at 11) (requiring knowledge of and participation in the conspiracy).

In any event, the Complaint does not allege that OILN, knowing of the conspiracy, nevertheless participated in it "unwillingly, reluctantly, or only in response to coercion," nor is that the basis of OILN's motion. *Cf. MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 973 (7th Cir. 1995) (cited by NorthStar Resp. at 11). Instead, the point of OILN's motion, which NorthStar's response completely fails to address, is that OILN is not alleged even to have known of any agreement between Chesapeake and Encana that Encana would not bid for

3

NorthStar's leases, and OILN therefore could not have participated, either reluctantly or enthusiastically, in such an arrangement. *See* OILN Br. at 4-6.

## II. NorthStar's Allegations Do Not Plausibly Suggest OILN's Active And Knowing Participation

Unable to quote a passage from its Complaint alleging OILN's active and knowing participation in any supposed scheme, NorthStar mischaracterizes and repackages the Complaint's allegations to create the impression that they contain facts which are, in truth, notably absent. *See* NorthStar Resp. at 9-10. The passages NorthStar identifies do not actually allege that OILN knew about any conspiracy between Chesapeake and Encana. The Complaint barely mentions OILN, and when it does, it merely alleges that OILN was Chesapeake's leasing agent (an undisputed and legally inadequate point) or offers conclusory allegations that OILN was a co-conspirator (which are insufficient to sustain a claim).

NorthStar's responses to OILN's motion fall into two categories.[3] In the first category, NorthStar makes new factual assertions, which are not included in the Complaint, about OILN acting as Chesapeake's leasing agent in northern Michigan. In the second category, NorthStar asserts that OILN became aware of the conspiracy through two emails between OILN and Chesapeake—one on June 16, 2010, and another on July 16, 2010. None of the assertions in either category is sufficient to survive OILN's motion.

**OILN acting as Chesapeake's agent.** To show OILN's active and knowing participation, NorthStar relies on four allegations that suggest nothing more than that OILN acted as Chesapeake's leasing agent. An agent, however, does not automatically obtain the knowledge

---

[3] NorthStar offers an additional insufficient allegation. It asserts (NorthStar Resp. at 10) that Chesapeake's and Encana's conduct at the State of Michigan October 2010 leasehold auction indicates that OILN knew of a June 2010 conspiracy between those two parties targeting NorthStar. The suggestion is nonsensical. Nothing about Chesapeake's and Encana's alleged conduct creates an inference about OILN, nor does the Complaint allege that OILN was in any way involved, as Chesapeake's leasing agent or otherwise, in the October auction.

4

of its principal, and OILN's agency status therefore does not create an inference that it had the requisite information. *See* OILN Br. at 5-6 (citing *Schmitt v. FMA Alliance*, 398 F.3d 995, 997 (8th Cir. 2005) (inference that an agent is imputed with the principal's knowledge would "contradict[] established agency law, which dictates that while the knowledge of the agent is imputed to the principal, the converse is not true"); *S.O.G.-San Ore-Gardner v. Mo. Pac. R.R. Co.*, 658 F.2d 562, 567 (8th Cir. 1981) (an agent cannot be imputed with information the principal failed to disclose)).

Citing three paragraphs in the Complaint, NorthStar asserts that OILN "knew of" and "participat[ed] in the competitive market for mineral rights in northern Michigan leading up to NorthStar putting its leases out for bid." NorthStar Resp. at 9. This fact is unremarkable: knowledge that a competitive market for leases exists does not support any inference that OILN knew about and actively participated in an alleged antitrust conspiracy. Furthermore, none of the three cited paragraphs of the Complaint mentions anything about an alleged agreement between Chesapeake and Encana, let alone that OILN knew of such an agreement. *See id.* at 9 (citing Compl., ¶¶ 27-29). The paragraphs show only that OILN contacted NorthStar as Chesapeake's leasing agent.

Similarly, NorthStar's assertion (NorthStar Resp. at 10) that "OILN knew of the desirability of NorthStar's leasehold position and that both Chesapeake and Encana desired to acquire NorthStar's leases" reads facts into the Complaint that are absent. Nothing in the four cited paragraphs alleges that OILN knew Encana desired NorthStar's leases; in fact, these paragraphs merely set forth what NorthStar itself allegedly observed through its own bidding process. *See* NorthStar Resp. at 10 (citing Compl., ¶¶ 27-28, 30, 32). In any event, knowledge about the "desires" of prospective bidders provides no basis to infer that OILN knew of an

5

agreement that Encana would refrain from bidding for NorthStar's leases. Such an allegation—even if it were in the Complaint—would merely show that OILN, as Chesapeake's leasing agent, knew about the Michigan area in which it worked.

The other two allegations in this category, that OILN "inked a deal" on Chesapeake's behalf in July at a price less than the prices paid at the State of Michigan leasehold auction two months earlier, and that OILN "reneged" on the terms of the deal that "Chesapeake had with NorthStar," (NorthStar Resp. at 10) also demonstrate nothing about OILN's knowledge of any alleged agreement between Chesapeake and Encana. Once more, these allegations confirm only that OILN was Chesapeake's leasing agent. *See* OILN Br. at 5-6.

**June 16, 2010 and July 16, 2010 emails between OILN and Chesapeake.** The June 16 and July 16 emails neither demonstrate the existence of an agreement that Encana would withdraw from bidding for NorthStar's leases, nor provide a basis to suggest OILN's active and knowing participation in such an agreement. NorthStar relies on what it calls its "best example" to suggest that the Court can infer OILN's knowing involvement: a June 16, 2010, email from Chesapeake's Aubrey McClendon to Chesapeake's Doug Jacobson, saying that it was "ti[m]e to smoke a peace pipe with [Encana] on this one." NorthStar Resp. at 1, 10 (citing Compl., ¶ 37; Compl., Ex. I, Dkt. 1-2, at 31 (June 25, 2012 Reuters article)). OILN's David McGuire was copied on the email. According to NorthStar (NorthStar Resp. at 10), this email demonstrates that "by no later than June 16, 2010," OILN knew of the "illicit scheme between Chesapeake and Encana." The email, however, refers to Walter Zaremba—an entirely different leaseholder—and makes no mention of NorthStar. Compl., Ex. H, Dkt. 1-2, at 27. Moreover, NorthStar states in response to Chesapeake's motion to dismiss that a later, June 22 draft letter of intent between Chesapeake and Encana "evidence[s] [their] mutual intent to combine *in some manner or other*,"

6

presumably at some future date. *See* NorthStar Resp. at 14-15; Compl., Ex. G, Dkt. 1-2, at 6-10 (Draft – Version #2). NorthStar cannot logically assert that from an email about a different landowner, OILN knew on June 16 about an agreement that Encana would not bid for NorthStar's leases, while at the same time maintaining that this agreement still had not been reached as of at least June 22.

In its effort to rewrite the plain words of the June 16 email (and to assert another fact found nowhere in the Complaint), NorthStar claims that the email's author, Aubrey McClendon, was "confused." NorthStar Resp. at 4. NorthStar points to a later email in the same chain to suggest that Mr. McClendon must have been referring to NorthStar all along. But the subsequent email makes no mention of NorthStar at all. Instead, Mr. McClendon asks Mr. McGuire, "[W]ho is the company on the map with the big spread but only about 50% net ownership?" *Id.*; *see* Compl., Ex. H, Dkt. 1-2, at 27. According to NorthStar, a schedule of NorthStar's leases attached to the July 28, 2010, Purchase and Sale Agreement between OILN and NorthStar shows that *it* was the "company with the [big] spread but only about 50% net ownership." NorthStar Resp. at 4 & n.2 (citing Compl., Ex. H, Dkt. 1-5, at 12-15). The schedule does nothing of the kind. According to this schedule, NorthStar held 100% ownership in many of its leases, and the blended average of its net ownership was about 70%. *See* Compl., Ex. H, Dkt. 1-5, at 12-15. It cannot be the case, then, that Mr. McClendon's question referred to NorthStar.

More to the point, even if Mr. McGuire had followed NorthStar's tortured path to conclude that the "big spread" company was NorthStar, the email does nothing to support an inference of OILN's knowledge of an agreement targeting NorthStar, because Mr. McClendon's "peace pipe" remark plainly referred to Mr. McGuire's update on the Zaremba negotiations. That Mr. McClendon also saw another company on a map, even if it were NorthStar, would not

7

affect the meaning of his earlier comment. In addition, the mere fact that Mr. McGuire exchanged emails with Mr. McClendon on June 16 does not support NorthStar's conclusory assertion—again absent from the Complaint—that "McGuire was brought in to McClendon's 'inner circle' of co-conspirators.'" *See* NorthStar Resp. at 2. As explained earlier, OILN was Chesapeake's leasing agent. It is natural for an agent to be in regular communication with its principal, and as the June 16 email shows, Mr. McGuire was doing just that—reporting on his negotiations with Zaremba. This normal course of business communication provides no basis to infer that the agent knew anything about the principal's alleged conspiratorial activities. *See* OILN Br. at 5-6.

NorthStar also relies on a July 16, 2010, email from Mr. McGuire to several Chesapeake personnel asking if it was a "coincidence" that both Chesapeake and Encana were reducing leasing by 50% around the same time.[4] NorthStar Resp. at 10 (citing Compl., ¶ 46); *see also* Declaration of Molly S. Boast ("Boast Decl."), Ex. A, Dkt. 19-2, at 2-3 (July 16, 2010 email).[5]

---

[4] In addition to misstating the facts of this email, NorthStar also misquotes it. *Compare* Boast Decl., Ex. A, Dkt. 19-2, at 2 ("Coincidence?"), *with* NorthStar Resp. at 10 ("the coincidence").

[5] If NorthStar hazards to rest its Complaint on snippets of emails quoted in newspaper articles, then it should not be surprised when the full text of those emails turns out to tell a different story. A court may consider "[d]ocuments that a defendant attaches to a motion to dismiss [as] part of the pleadings if they are *referred to* in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (emphasis added) (internal quotation marks omitted) (cited by NorthStar Resp. at 11). Contrary to NorthStar's argument, this rule is not based on a narrow exception for certain kinds of documents, but rather turns on whether the documents are "central" to the plaintiff's claim. *See Weiner*, 108 F.3d at 89. The two emails attached to the Boast Declaration plainly fit this description.

The purpose of the rule is to prevent precisely what NorthStar is trying to do here: allowing a plaintiff to "survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* The fact that NorthStar selectively quoted from emails rather than a contract does not undermine the force of these principles, which permit this Court to consider the full context of the emails on which NorthStar has chosen to base its Complaint. *See, e.g.*, *Blay v. Zipcar, Inc.*, 716 F. Supp. 2d 115, 119 (D. Mass. 2010) (denying motion to

8

But this exchange occurred more than three weeks after Encana withdrew from bidding for NorthStar's leases on June 23 and refers to steps taken by Chesapeake that had nothing to do with NorthStar; by then, Chesapeake had accepted the outline of terms that NorthStar had counter-offered. Compl., ¶¶ 40, 45. Moreover, the July 16 email exchange actually suggests the exact opposite of the inference NorthStar seeks. In it, Chesapeake's Brian Exline replied to Mr. McGuire, "We'll find out more definitive information in the days to come. However, not a rumor that we are halting our efforts for the time being." Boast. Decl., Ex. A, Dkt. 19-2, at 2. Had Mr. McGuire known of the alleged conspiracy between Chesapeake and Encana or been within the "'inner circle' of conspirators," he would not have needed to ask whether their conduct was a coincidence; he already would have known about both Chesapeake's and Encana's activity. And Mr. Exline surely would have responded differently; his email shows that he did not know about Encana's intentions either.

In sum, even by inventing facts and mischaracterizing the allegations in its own Complaint, NorthStar cannot point to factual allegations leading to the plausible inference that OILN actively and knowingly participated in any alleged Chesapeake-Encana agreement that Encana would not bid for NorthStar's acreage.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against OILN with prejudice.

---

strike emails, incorporated by reference in the complaint, that were attached to defendant's motion to dismiss); *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 124 (W.D.N.Y. 2010) (considering email chain attached to motion to dismiss where emails were incorporated by reference in complaint alleging emails evidenced age discrimination).

                                        Respectfully submitted,

                                        WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for Defendants Chesapeake Energy Corporation and O.I.L. Niagaran, L.L.C.*

Dated: June 25, 2013                    By: /s/ Molly S. Boast
                                        Molly S. Boast
                                        Sanket J. Bulsara
                                        7 World Trade Center
                                        250 Greenwich Street
                                        New York, NY 10007
                                        212.230.8800
                                        molly.boast@wilmerhale.com